FILED
2010 Oct-27  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **KATINA B. HARRIS, EBONY J. MCKINNEY, KATRICE SMITH, DEBORAH BOGLIN, and MAYA COHEN, on behalf of THEMSELVES and all others similarly situated,** )<br>)<br>)<br>)<br>)<br>) | |
| ) | **CIVIL ACTION NO.:** |
| ) | **2:10-cv-02799-HGD** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **MYLIFE.COM, INC.** ) | |
| | |
| **Defendant.** | |

## AMENDED CLASS ACTION COMPLAINT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs Katina B. Harris, Ebony J. McKinney, Katrice Smith, Deborah Boglin, and Maya Cohen (hereinafter "plaintiffs") bring this nationwide class action, on behalf of themselves and all others similarly situated, against defendant MyLife.com, Inc. (hereinafter "MyLife" or "defendant").  Plaintiffs seek redress for the fraudulent and misleading nature of defendant's website and advertisements, invasion of privacy, and breach of contract.

## INTRODUCTION

1.     This nationwide class action seeks redress for an outrageous fraudulent scheme perpetrated by one of the fastest growing Internet sites in the

country.  The defendant, MyLife.com, Inc., has grown to be a major web portal by advertising and claiming on its website that, by hitting a button on its website, one can find out for free who has been "searching" for him or her.  In this age of social networking and Internet dating, it is readily apparent why such an offer would have widespread appeal.

2.     But it is a lie.  Plaintiffs herein each clicked on the button to find out who was searching for them, and were then prompted to enter highly personal information about themselves:  their first and last names, their ages, their email addresses, and their zip codes. Only *after* entering this personal information were plaintiffs informed that to see the list of people who had searched for them, they would have to sign up for a service costing $11.95 minimum for one month.  When the plaintiffs declined to sign up, and went to the next internet page in their browsing session, they were not aware that they had left something valuable behind:   their personal information entered into MyLife.com's database, information that MyLife.com immediately made available to anyone willing to pay its service fee.

3.     Being able to obtain that private personal information was MyLife.com's entire motivation for its fraudulent scheme.  MyLife.com, which started out life as Reunion.com, needed to be able to maximize how many "members" that MyLife.com could claim to have personal information about in

order to induce others to become *paying* members. The more "members" MyLife.com had, the more people it could claim users could "search" for using its search service. Accordingly, the fraudulent scheme enabled MyLife.com to grow in less than two years to what it's CEO and founder describes as "the leading people search platform on the Internet."

## JURISDICTION AND VENUE

4.     Plaintiff Katina B. Harris is an adult resident citizen of Jefferson County, Alabama.

5.     Plaintiff Ebony J. McKinney is an adult resident citizen of Jefferson County, Alabama.

6.     Plaintiff Katrice Smith is an adult resident citizen of Jefferson County, Alabama.

7.     Plaintiff Deborah Boglin is an adult resident citizen of Madison County, Alabama.

8.     Plaintiff Maya Cohen is an adult resident citizen of Los Angeles County, California.

9.     Defendant MyLife.com, Inc. is a corporation incorporated in Delaware with its principal place of business and headquarters located in California. MyLife is a foreign corporation doing business in the state of Alabama and does business in this district and division.

10.     This is a class action with class members located throughout the United States.  Less than one-third of the class members reside in Alabama.  The defendant is not a citizen of Alabama.   The amount in controversy exceeds $5,000,000.00 (five million dollars) exclusive of interest and costs.  Accordingly, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(d) (as modified by the Class Action Fairness Act of 2005).

11.     Venue is proper under 28 U.S.C. §1391, since the events giving rise to some of the named plaintiffs' claims occurred within this judicial district and division and since defendant is subject to the personal jurisdiction of this Court.

## NATURE OF THE CASE

12.     This is a putative class action on behalf of Katina B. Harris, Ebony J. McKinney, Katrice Smith, Deborah Boglin, and Maya Cohen, and a class of all others similarly situated against MyLife.

13.     Defendant MyLife is located principally in California, and California law makes it unlawful for Defendant MyLife to make or disseminate or cause to be made or disseminated from California before the public in any state false and misleading statements.

14.     Defendant MyLife entices people to visit and register on its website with promises of finding out instantly for FREE who is searching for them.  This is accomplished through false and misleading advertisements.

4

15.     Defendant MyLife promotes and markets itself as helping people find people from anytime in their life, no matter where they are – all in one place. Their goal is to provide the most comprehensive people search service to help the individuals who register on their website easily find and stay connected with friends, family, loved ones, and colleagues.

16.     Defendant MyLife advertises and markets its website services as FREE, despite the fact that it requires a membership fee to actually use the website services and find out the results of who may be searching for that individual.

17.     Defendant MyLife collects, stores, and disseminates plaintiffs' and putative class members' private and confidential information to other individuals and entities without their knowledge or consent.

18.     Importantly, plaintiffs and the class members only go to MyLife.com for free access to defendant MyLife's website services.  Nobody goes to the site to sign-up for a monthly or annual membership because none of the commercials or advertisements during the class period explain that access to MyLife.com costs money.

## FACTUAL ALLEGATIONS

19.     Defendant MyLife, at all times relevant hereto, was engaged in the business of operating, promoting, marketing, and selling its website services as

helping people find people from anytime in their life, no matter where they are – all in one place.

20.   Defendant MyLife markets its website services as FREE for individuals who click on the link, provide information to MyLife, and desire to find out who is searching for them.  This could not be further from the truth.  After clicking on the link that says: "find out instantly FREE," the webpage that plaintiffs and the members of the class are sent to requires them to pay a fee in order to find out specifically who is searching for them on MyLife.com.  (Website attached hereto as "Exhibit A")

21.   Defendant MyLife continues to advertise and market its website services as free - despite requiring a membership fee in order to use the website's services - through television commercials and internet throughout the United States.

22.   Plaintiff Katina Harris was lured to MyLife's website on March 24, 2009, under the belief that she could find individuals searching for her for free from MyLife.com.  This occurred in Jefferson County, Alabama.

23.   Plaintiff Harris went to MyLife.com with the impression that if she filled out all of the required information that she would be granted access to MyLife's website services without having to pay any money.  She was unaware at the time she provided MyLife with personal information that she would have to

pay a membership fee in order to find out who was searching for her on MyLife.com.

24.    MyLife denied Plaintiff Harris access to its website services because Plaintiff Harris did not pay the membership fee.

25.    Plaintiff Harris was never told who was searching for her on MyLife.com.

26.    Plaintiff Ebony J. McKinney was lured to MyLife's website on numerous occasions, under the belief that she could find individuals searching for her for free from MyLife.com.  This occurred in Jefferson County, Alabama.

27.    Plaintiff McKinney went to MyLife.com with the impression that if she filled out all of the required information that she would be granted access to MyLife's website services without having to pay any money.  She was unaware at the time she provided MyLife with personal information that she would have to pay a membership fee in order to find out who was searching for her on MyLife.com.

28.    MyLife denied Plaintiff McKinney access to its website services because Plaintiff McKinney did not pay the membership fee.

29.    Plaintiff McKinney was never told who was searching for her on MyLife.com.

30.    Plaintiff Katrice Smith was lured to MyLife's website in October of 2010, under the belief that she could find individuals searching for her for free from MyLife.com.  This occurred in Jefferson County, Alabama.

31.    Plaintiff Smith went to MyLife.com with the impression that if she filled out all of the required information that she would be granted access to MyLife's website services without having to pay any money.  She was unaware at the time she provided MyLife with personal information that she would have to pay a membership fee in order to find out who was searching for her on MyLife.com.

32.    MyLife denied Plaintiff Smith access to its website services because Plaintiff Smith did not pay the membership fee.

33.    Plaintiff Smith was never told who was searching for her on MyLife.com.

34.    Plaintiff Deborah Boglin was lured to MyLife's website in 2009, under the belief that she could find individuals searching for her for free from MyLife.com.  This occurred in Madison County, Alabama.

35.    Plaintiff Boglin went to MyLife.com with the impression that if she filled out all of the required information that she would be granted access to MyLife's website services without having to pay any money.  She was unaware at the time she provided MyLife with personal information that she would have to

pay a membership fee in order to find out who was searching for her on MyLife.com.

36.   MyLife denied Plaintiff Boglin access to its website services because Plaintiff Boglin did not pay the membership fee.

37.   Plaintiff Boglin was never told who was searching for her on MyLife.com.

38.   Plaintiff Maya Cohen was lured to MyLife's website in August of 2010, under the belief that she could find individuals searching for her for free from MyLife.com.  This occurred in Los Angeles County, California.

39.   Plaintiff Cohen went to MyLife.com with the impression that if she filled out all of the required information that she would be granted access to MyLife's website services without having to pay any money.  She was unaware at the time she provided MyLife with personal information that she would have to pay a membership fee in order to find out who was searching for her on MyLife.com.

40.   MyLife denied Plaintiff Cohen access to its website services because Plaintiff Cohen did not pay the membership fee.

41.   Plaintiff Cohen was never told who was searching for her on MyLife.com.

42.    Plaintiffs and members of the class have suffered damages as a result of defendant's fraudulent and misleading website and advertisements, invasion of privacy, and breach of contract.

## CLASS ACTION ALLEGATIONS

43.    Plaintiffs bring this action on their own behalf and on behalf of others similarly situated as a nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The class which plaintiffs seek to represent is composed of and defined as: All persons who visited the defendant's website in response to their falsely advertised free search.

44.    This action has been brought and may properly be maintained as a class action pursuant to the provisions of the Rule 23(a)(l)-(4) and Rule 23(b) of the Federal Rules of Civil Procedure, and satisfies the numerosity, commonality, typicality, adequacy and superiority requirements thereof because:

a.    The plaintiff class is so numerous that the individual joinder of all members is impracticable under the standard of Fed. R. Civ. P. 23(a)(l).

b.    Common questions of law and fact exist as to all members of the class, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions which affect only individual members of the class within the meaning of Fed. R. Civ. P. 23(a)(2). These common questions of law and fact include, without limitation:

i. Whether defendant has engaged in a violation of law as alleged herein;

ii. Whether defendant by nature of its wrongful conduct is liable for damages and losses resulting from the conduct alleged herein; and

iii. Whether defendant had a policy and uniform practice with respect to falsely advertising FREE social networking services and to illegally collecting, storing, and disseminating private and confidential information.

c.    Plaintiffs' claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The plaintiffs and all members of the class sustained damages arising out of defendant's common course of conduct in violation of law as complained herein. The losses of each member of the class were caused directly by defendant's wrongful conduct in violation of law as alleged herein.

d.    The individual and representative plaintiffs will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4).  Plaintiffs have no interests which are adverse to the interests of the class members. Plaintiffs, like the other class members, registered with MyLife to use their website services to see who was looking for them.

11

However, after preliminary registration, plaintiffs were asked to pay a membership fee in order to find out who was searching for them, despite being lured to the site under the pretense that it was free. Plaintiffs have retained counsel who have substantial experience and success in the prosecution of class action and consumer litigation.

e.    The scheme affected all class members similarly. Plaintiffs and all members of the class were treated the same. As a result, the issues which affect the plaintiffs and the class members in common predominate over those which affect only the interest of any particular class member. Thus, common questions of law and fact greatly predominate over questions of law or fact affecting only individual members of the class.

f.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. P. 23(b) since individual joinder of all members of the class is impracticable. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or

contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the factual issues of the case. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## FIRST CLAIM FOR RELIEF

## UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §§ 17200 et seq.

45.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

46.    Cal. Bus. & Prof. Code §§ 17200 et seq. prohibits all unlawful, unfair, or fraudulent business practices and acts.  This statute is liberally construed to protect the public.

47.    In committing the acts alleged herein, defendant engaged and continues to engage in an unlawful, unfair, and deceptive business practice in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that occurred and continues to occur in the ordinary course of defendant's business.  Thus, defendant's conduct impacts the public interest.

48.    Defendant's practices have and are likely to deceive consumers. Individuals go to MyLife.com and register under the impression that they may

sign-up for free and find out instantly who may be searching for them. However, nothing could be further from the truth.

49.     Defendant's acts and business practices are unlawful because MyLife made false and deceptive representations through its internet and television advertisements that it was providing FREE access to its website services when in fact all individuals were required to pay a membership fee in order to find out specifically who was searching for them on MyLife.com.

50.     Defendant tricked plaintiffs and all class members into giving defendant their personal information for FREE access to MyLife.com when, in fact, defendant never intended for plaintiffs or any class members to gain FREE access.

51.     Plaintiffs, on behalf of themselves and all class members, seek an order of this Court permanently enjoining defendant from continuing to engage in its unfair and unlawful conduct and an order awarding profits unfairly obtained and/or benefits in which the plaintiffs have an ownership interest.

Wherefore, premises considered, plaintiffs and the class demand judgment against the defendant for compensatory and statutory damages, plus interest, attorney's fees, costs and such additional relief as the Court may deem appropriate or to which plaintiffs may be entitled.

## <u>SECOND CLAIM FOR RELIEF</u>

## FALSE, MISLEADING, OR UNTRUE ADVERTISING LAW,
## Cal. Bus. & Prof. Code §§ 17500 et seq.

52.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

53.    Defendant advertised nationally to the public through the Internet and television commercials FREE access to MyLife.com to find out who was searching for them on MyLife.com.

54.    Defendant engaged in the advertising and marketing of FREE access to MyLife.com with the intent to induce individuals to register on MyLife.com and then pay a membership fee before being allowed access to defendant's website services.

55.    Defendant's advertisement and marketing representations repeatedly stated that it provided FREE access to its website services when this was, in fact, untrue.

56.    At the time it made and disseminated the false and misleading statements in its advertisements, defendant knew that the statements were false, deceptive, or misleading and in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

57.    Defendant knew that its actions were completely contradictory to the representations it made to individuals in its advertisements.

58.    Defendant's false and misleading advertisements harmed plaintiffs and the class members because such advertisements induced and continue to induce individuals to register on MyLife.com for FREE access, when the FREE access comes with a required membership fee.

59.    As a result of the violations of California law, defendant has been unjustly enriched at the plaintiffs' and class members' expense by receipt of their personal information when they register for FREE access on MyLife.com. Defendant, then, collects, stores, uses, and/or disseminates this personal information for its own benefit and/or for the benefit of others.

60.    Thus, plaintiffs and class members have suffered injury in fact and have lost property and/or money.

61.    Plaintiffs seek restitution, injunctive relief, and all other relief allowable under Cal. Bus. & Prof. Code § 17535 et seq.

Wherefore, premises considered, plaintiffs and the class demand judgment against the defendant for compensatory and statutory damages, plus interest, attorney's fees, costs and such additional relief as the Court may deem appropriate or to which plaintiffs may be entitled.

## THIRD CLAIM FOR RELIEF

## WILLFUL DECEPTION, Cal. Civil Code §§ 1709 - 1710

62.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

63.     Cal. Civil Code § 1709 prohibits willful deception of another with intent to induce a detrimental change in position.

64.     Cal. Civil Code § 1710 provides in relevant part that "deceit … is either:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
> 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
> 4. A promise, made without any intention of performing it."

65.     Defendant violated Cal. Civil Code §§ 1709 and 1710 by promising to provide FREE access to MyLife.com, with knowledge that it had no intention of providing FREE access to MyLife.com, and intended for plaintiffs and class members to rely on these false statements, on which plaintiffs and class members justifiably relied to their detriment.

66.     Defendant falsely promised FREE access to MyLife.com for individuals who wanted to find out instantly for FREE who was searching for them.

67.     Defendant failed to provide this FREE access.

68.     Plaintiffs and class members relied to their detriment on defendant's false promise by providing MyLife with personal information, such as their date of birth and private email address, that MyLife had no right to obtain.  The plaintiffs and class members would not have given MyLife this information if they had known that they would not receive FREE access to MyLife.com.

69.     Plaintiffs and the class members were harmed by defendant's advertisements regarding FREE access to MyLife.com.  Defendant uses plaintiffs' and class members' email addresses to send unwanted emails, advertisements, and notifications from MyLife and/or others, and plaintiffs and class members never received FREE access to MyLife.com to find out specifically who was searching for them.

70.     Defendant is liable to plaintiffs and class members for damages caused by defendant's deceit.

Wherefore, premises considered, plaintiffs and the class demand judgment against the defendant for compensatory and statutory damages, plus interest, attorney's fees, costs and such additional relief as the Court may deem appropriate or to which plaintiffs may be entitled.

## FOURTH CLAIM FOR RELIEF

## ACTUAL FRAUD, Cal. Civil Code § 1572

71.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

72.    Cal. Civil Code § 1572 provides in relevant part that "[a]ctual fraud … consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or
> 5. Any other act fitted to deceive."

73.    Defendant violated Cal. Civil Code § 1572 by promising that it would provide FREE access to MyLife.com to individuals to find out who was searching for them on the MyLife.com website, when defendant had no intention of performing this promise.

74.    Defendant knew that its Internet and television marketing and advertising of "find out instantly FREE" was false and intended for individuals to rely on this promise.  Defendant's fraudulent advertising campaign on the Internet and television went on for years and reached millions of people.

75.     Plaintiffs and class members did rely on defendant's false representations to their detriment by providing MyLife with personal information and with information that would aide MyLife with its business.

76.     Plaintiffs and class members would not have given MyLife this personal information if they had known that MyLife had no intention of providing them with FREE access to My.Life.com

77.     As a direct and proximate result of defendant's fraud, plaintiffs and class members have suffered damages.

Wherefore, premises considered, plaintiffs and the class demand judgment against the defendant for compensatory and statutory damages, plus interest, attorney's fees, costs and such additional relief as the Court may deem appropriate or to which plaintiffs may be entitled.

## FIFTH CLAIM FOR RELIEF

## INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACTS

78.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

79.     MyLife obtained private information from each plaintiff and each class member under the pretense of providing them with a free search of MyLife's website.

80.    Each plaintiff and each class member provided MyLife with private information, while under the impression that they would receive free access to MyLife's website.

81.    Plaintiffs and the plaintiff class did not agree to any terms or conditions authorizing MyLife to keep or retain their private information.

82.    Plaintiffs and class members were not aware that MyLife was collecting their private information for widespread dissemination through their network and website.

83.    Plaintiffs and class members did not give MyLife permission to widely disseminate their private and confidential information to others.

84.    Plaintiffs and class members object to MyLife's    widespread dissemination of their private and confidential information to others, and a reasonable person would object to MyLife's pattern and practice of collecting private and confidential information for widespread dissemination to others.

85.    As a direct and proximate consequence of the above-mentioned violations, and by reasons thereof, plaintiffs and class members have suffered damages.

Wherefore, premises considered, plaintiffs and the class demand judgment against the defendants for compensatory and statutory damages, plus interest,

attorney's fees, costs and such additional relief as the Court may deem appropriate or to which plaintiff may be entitled.

## SIXTH CLAIM FOR RELIEF

## BREACH OF CONTRACT

86.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

87.    MyLife had a contract with plaintiffs and each member of the plaintiff class to provide a free search of its website so that plaintiffs and each class member could find out who was searching for them on MyLife.com.

88.    In consideration of its promise to provide a free search of its website, MyLife accepted personal information from each plaintiff and each member of the plaintiff class.

89.    Plaintiffs and each class member fully performed her or his end of the contractual agreement.

90.    MyLife breached its contractual obligations to plaintiffs and each class member by not providing this free search of its website – instead requiring plaintiffs and each class member to pay a membership fee before being allowed access to find out specifically who was searching for them on MyLife.com.

91.    As a consequence of MyLife's breach of contract, plaintiffs and the class members have suffered damages.

Wherefore, premises considered, plaintiffs and the class demand judgment against the defendant for compensatory and statutory damages, plus interest, attorney's fees, costs and such additional relief as the Court may deem appropriate or to which plaintiff may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, plaintiff seeks the following relief:

(a)     Following appropriate discovery, an order certifying this cause as a nationwide class action pursuant to Fed. R. Civ. P. 23, with appropriate subclasses as the Court deems appropriate, and notice as applicable to the absent class members, and appointing D. Frank Davis and John E. Norris as class counsel;

(b)     A declaration that MyLife's nationwide pattern and practice of conduct as alleged herein constitutes fraudulent and misleading conduct, invasion of privacy, and breach of contract as described herein;

(c)     Appropriate injunctive relief requiring the defendants to refrain from engaging in fraudulent and misleading conduct;

(d)     An award of compensatory damages to compensate plaintiffs and the class members;

(e)     An award of statutory damages;

(f)     Disgorgement of defendant's ill-gotten gains ;

(g)     Restitution;

(h)     Interest;

(i)      Attorneys' fees and costs; and such further and different relief as the

Court may deem appropriate.

**Plaintiff demands trial by struck jury.**

/s/ John E. Norris_____
John E. Norris
One of the Attorneys for Plaintiff

**OF COUNSEL:**
D. Frank Davis (DAV009)
John E. Norris (NOR041)
Wesley W. Barnett (BAR141)
Courtney L. Peinhardt (PEI001)
Davis & Norris, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
courtney@davisnorris.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that pursuant to Rule 5 of the Federal Rules of Civil Procedure, the plaintiff on this the 27th day of October, 2010, served a true and correct copy of the foregoing by U.S. Postal Service addressed as follows:

MyLife.com, Inc.
c/o Registered Agent
CSC – Lawyers Incorporating Service
2730 Gateway Oaks Dr Ste 100
Sacramento, California 95833

/s/ John E. Norris_____
John E. Norris

# Exhibit A

